## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

In re:                                              Case No.: 25-31100 AMN

    **MICHAEL H LOTTO**                      Chapter: 13

                Debtor.          ECF No. 40

_____/

### <u>RESPONSE TO ORDER TO SHOW CAUSE</u>

Pursuant to the oral *Order* of this Honorable Court, the Undersigned Respectfully Submits the following written response, and accompanying exhibits, to this Honorable Court's *Order to Show Cause*.

### 1.  Timing of Bankruptcy Filing

In the *Order to Show Cause*, this Honorable Court questions the propriety and appropriateness of the Debtor's Chapter 13 bankruptcy filing on the same morning of a scheduled state court foreclosure auction of the Debtor's property, which raises questions whether the case was filed solely for the purpose of obstructing a creditor.

The Debtor's Chapter 13 case was filed the morning of Saturday, November 22, 2025, the same morning of the scheduled foreclosure auction in the state court foreclosure case.  While the Debtor did intend to prevent the foreclosure auction from going forward, the Debtor and Counsel had a good-faith basis to believe that the Debtor would be able to successfully prosecute the Debtor's Chapter 13 case and make the appropriate plan payments.

1

At the beginning of July 2025, the Debtor's domestic partner passed away suddenly and unexpectedly at the home that he shared with the Debtor.  (*See* Exhibit H, pgs. 46-48.)  The Debtor is listed on the second page of Exhibit H (*Exhibits*, pg. 48), as the "devoted partner of 20 years" of the decedent.

Approximately three (3) months after the death of the Debtor's long-time domestic partner, the Debtor learned that, as a former employee who "dedicated many years to the United States Postal Service," (*id.*), the Debtor's domestic partner had, as a benefit of his prior employment with the USPS, an employer funded life insurance policy.  The Debtor, himself also a former employee of the USPS, was able to obtain enough information from the USPS to determine that the life insurance policy would likely include a six-figure death benefit.  Having learned just weeks prior to the scheduled foreclosure auction of the existence of the life insurance policy, the Debtor began the process of filing a claim for the death benefit.

It is with this framework and background in mind, that the Debtor met with Counsel on November 20, 2025, to discuss filing for bankruptcy to stop the foreclosure auction. (*See* Exhibit F, pgs. 26-36.)  The expectation coming out of the meeting was that the expected life insurance payout would be sufficient to sustain a significant portion of the Chapter 13 plan payments, allowing the Debtor to successfully prosecute the Chapter 13 case and successfully complete a Plan.  Undersigned Counsel was aware of the death of the Debtor's long-time domestic partner, and of the decedent's prior employment with the USPS, as the Undersigned represented the decedent before the Social Security Administration regarding a claim for disability benefits, which was pending at the time of the decedent's death.

Under the circumstances, the Undersigned believed and expected that a six-figure life insurance claim payment was forthcoming, which would allow the Debtor to successfully complete a Chapter 13 Plan and save the Debtor's home from foreclosure, which the Undersigned respectfully submits was reasonable.  During the evening of November 20, 2025 and the morning of November 21, Undersigned Counsel prepared the Debtor's petition and schedules for filing, utilizing the Jubilee Pro cloud bankruptcy preparation software, (*see* Exhibit A, pgs. 1-10), which the Undersigned has used since approximately April 2017, to prepare bankruptcy petitions for filing.  On the evening of November 21, 2025, the Undersigned forwarded the petition to the Debtor for his review and execution.  The appended Exhibit G (pgs. 37-44), are the original signature pages signed by the Debtor on November 21, 2025.

On the morning of Saturday, November 22, 2025, prior to the start of the scheduled state-court foreclosure auction, the Undersigned completed the filing of the Debtor's Chapter 13 case.  Immediately upon filing, the Undersigned e-mailed the Notice of Filing to the foreclosure committee.  The foreclosure committee did not receive the notice of filing until after the foreclosure auction.  The auction took place as scheduled at 12:00 noon on Saturday, November 22, 2025.  (*See* Exhibit I, at pgs. 60-61.)  There were two bids at the auction: the mortgagee bid the debt and a single bidder bid $1 in excess of the debt, thus winning the auction.  On November 24, 2025, the foreclosure committee moved the state court for approval of the foreclosure sale to the highest bidder.  The state court ultimately approved the foreclosure sale.  (*See* Exhibit J, pgs. 63-64.)

### 2.  Counsel's Failure to Correct Incorrect Chapter 13 Plan

Notwithstanding the state court foreclosure auction proceeding on November 22, 2025, but prior to the state court approving the foreclosure sale, the Undersigned met with the Debtor to prepare a proposed Chapter 13 Plan.  After meeting with the Debtor, the Undersigned prepared the Debtor's Chapter 13 Plan utilizing the same Jubilee Pro bankruptcy preparation software used to complete the Petition.

Upon selecting the "Plan Manager" tab on the left side of the screen, the software opens the "Chapter 13 Plan Manager & Calculations" screen.  (*See* Exhibit B, pg. 12.) Under the Plan Manager, the Undersigned selected the appropriate plan from the drop-down menu, "CTB [Connecticut Bankruptcy Court]: Chapter 13 Plan," (*see id.*), and filled in the appropriate required fields to populate and generate the Chapter 13 Plan for filing. The alternative drop-down menu option is "National Chapter 13 Plan."  Thereafter, the Undersigned selected the "View Plan" button, (*see id.*, at red arrow), which opened the fillable plan screen.  (*See* Exhibit C, pg. 14.)  Selecting the "Download PDF" button, (*see* Exhibit B, pg. 13), produces a draft PDF of the Chapter 13 Plan with a "DRAFT" watermark.  (*See* Exhibit D, pgs. 16-23.)

After reviewing the draft Chapter 13 Plan with the Debtor, and obtaining the Debtor's signature on the proposed Plan, (*see* Exhibit G, pg. 45), the Undersigned filed the proposed Chapter 13 Plan with this Honorable Court.

At the time that the proposed Chapter 13 Plan was filed, the Undersigned was aware that the Connecticut Bankruptcy Court Local Form Chapter 13 Plan had been revised as of September 2025.  (*See* Exhibit E, pg. 25.)  In the bankruptcy preparation

software utilized by the Undersigned, on the Plan Management screen, after selecting "CTB: Chapter 13 Plan," the software screen indicates that the "CTB: Chapter 13 Plan" is the revision dated 09/01/2025 ("rev. 09/01/2025"). (*See* Exhibit B, pg. 12.) Upon selecting the "View Plan" button, which opens the fillable plan screen, on the fillable plan screen the software identifies "Connecticut Local Form Chapter 13 Plan" and indicated a form date of "09/2025." (*See* Exhibit C, pg. 14.) Likewise, the PDF of the draft Chapter 13 Plan generated by the software, also is entitled "Connecticut Local Form Chapter 13 Plan" with a form date of "09/2025," noted on the top of the first page, and noted on the bottom of each of the subsequent pages of the draft Chapter 13 Plan. (*See* Exhibit D, pgs. 16-23.)

Between September 2025 and December 2025, the Undersigned had not filed any Chapter 13 bankruptcy cases, nor any Chapter 13 Plans, and was unaware that the Local Form Chapter 13 Plan generated by the preparation software, was not the correct local form. The Undersigned learned of this fact upon receiving notice from this Honorable Court that the Debtor's proposed Chapter 13 Plan was rejected because of the non-conforming form.

Shortly after filing the Debtor's proposed Chapter 13 Plan, the Debtor informed the Undersigned that he had learned from his deceased partner's sister that the beneficiary on the decedent's USPS life insurance policy is the mother of the decedent, who had pre-deceased the decedent by 25 months. The secondary or back-up beneficiary on the policy is the decedent's father, who is still alive. Since the Debtor was not named as the beneficiary of the decedent's USPS life insurance policy, it became clear to the Undersigned that without the expected life insurance proceeds, based solely on the

Debtor's limited social security income and pension benefits, the Debtor would not be able to make the necessary plan payments.

After discussion with the Debtor, because the purpose of the Chapter 13 filing was to successfully complete a plan and prevent the loss of the Debtor's property, with the expected life insurance proceeds the Debtor's only anticipated means to satisfy the required plan payments, it was clear that the Debtor would not be able to afford plan payments and successfully prosecute the Chapter 13 case to discharge.

Because a Chapter 13 Plan was no longer feasible due to the loss of the expected funding source, the re-filing of the Debtor's proposed Chapter 13 Plan on the correct Local Form appeared to the Undersigned to be superfluous.  It was evident to the Undersigned that filing a corrected proposed Chapter 13 plan was futile, where the Debtor no longer could reasonably anticipate receipt of the funding source, and thus could not fund a comfirmable Plan.  The Undersigned did review the revised Local Form Chapter 13 Plan on this Honorable Court's website, to become familiar with the new, revised Local Form, in response to this Honorable Court's notice that the Debtor's plan was filed on the incorrect form.  However, the Undersigned chose not to re-file a corrected proposed Plan where it would be futile in the Debtor's Chapter 13 case, and instead expected that the instant case would simply be dismissed by this Honorable Court in the ordinary course, for failing to file the corrected proposed plan.

Similarly, because it became clear to the Undersigned and the Debtor within just a few days after December 8, 2025 that the Debtor would not be able to make estimated plan payments, and the Undersigned's expectation and belief was that the instant case

**6**

would be dismissed by this Honorable Court in ordinary course because a revised plan on the correct form was not filed, the Debtor and the Undersigned did not attend the Section 341 meeting and the Debtor did make any pre-confirmation plan payments.

### 3. Counsel's Failure to Respond to Order to Show Cause

The Undersigned is exceedingly embarrassed by and deeply regrets my failure to respond to this Honorable Court's *Orders to Show Cause*. By way of explanation, though by absolutely no means an excuse:

It was my genuine expectation and belief that, because the Debtor and I had come to conclude that a Chapter 13 plan was no longer comfirmable nor affordable, and therefore I elected not to file a corrected Chapter 13 Plan on the correct Local Form, the instant bankruptcy case would simply be dismissed in ordinary and due course. At that time, the instant case was the only matter that I had pending before this Honorable Court. There were no other pending bankruptcy cases in which I was counsel of record and/or that were filed by me.

Therefore, under the erroneous belief that the instant case would be dismissed, I foolishly and embarrassingly neglected to check my e-mail inbox for further notices from this Honorable Court. Again, as an explanation, I have appended to this filing as Exhibit K, screenshots from my e-mail inbox. As this Honorable Court can see in Exhibit K, all Notices from the Bankruptcy Court are automatically labeled and filter into a separate inbox folder entitled "Bankruptcy Court Notices." (There are similar folders set-up for "Federal Court Notices," "State Court Notices," "Criminal Court Notices," etc.) I devised this system of automatically labeling, filtering, and sorting incoming e-mails several years

ago, in an effort to better organize my e-mail inbox by categorizing e-mails based upon the sender's e-mail address. My goal and intention was to better manage my e-mails by de-cluttering my inbox. Up until this point, the e-mail inbox system seemed to be working quite well.

As this Honorable Court will also see in Exhibit K, in order to see any received e-mails containing or about Bankruptcy Court notices, I have to click on the "Mail" icon on the left side of the screen, which opens a menu inlay; towards the bottom of the menu inlay, under the heading "Labels," are the separate inbox folders for various categories of e-mails which I have designated to be filtered into separate folders, in my efforts to better organize and de-clutter my inbox. Only after clicking on the separate folder entitled "Bankruptcy Court Notices," it would open that inbox folder, and I would be able to see any notices that I have received from this Honorable Court.

Because I was under the mistaken belief that the instant case was going to be dismissed in ordinary course after a corrected proposed Chapter 13 Plan was not filed on the correct Local Form, and because I was aware that there were no other matters pending before this Honorable Court in which I was appearing as counsel of record, I quite embarrassingly was not at all vigilant about checking my e-mail inbox folder for Notices and e-mails from this Honorable Court. I am deeply ashamed to admit to this Honorable Court that I was not expecting to receive any further notices from this Honorable Court, and therefore I thought I had no reason to check my "Bankruptcy Court Notices" inbox folder for new e-mails. And because I was not checking the appropriate inbox folder for notices from this Honorable Court, I was unaware of this Honorable Court's *Order(s) to Show Cause*.

As a result, it was not until I received the e-mail from the Honorable Clerk of this Honorable Court, on May 19, 2026, that I became aware of this Honorable Court's *Order to Show Cause*, and that is also when I became aware of the show cause hearing scheduled for Thursday, May 28, 2026, which I attended before this Honorable Court.

Once again, I am deeply embarrassed for missing the numerous notices from this Honorable Court regarding the *Order to Show Cause*, and for failing to respond to the same. Attending the show cause hearing before this Honorable Court on May 28th was humbling and embarrassing, and I am ashamed of my failure to respond to this Honorable Court's Order to Show Cause.

I deeply regret my failures vis-à-vis my obligations to this Honorable Court, and I have begun to work on solutions to prevent this from ever happening again. As a first-step towards rectifying my failures before this Honorable Court, as this Honorable Court can see in the last page of Exhibit K, the first proactive action that I have taken is to update the my e-mail filters pertaining to Bankruptcy Court Notices, so that notices from this Honorable Court no longer "Skip Inbox" (which had the affect of sending new, incoming notices from this Honorable Court *only* to the separate inbox folder labeled "Bankruptcy Court Notices." Instead, now with the "Skip Inbox" filter action removed, all notices from this Honorable Court will **both** appear in my regular e-mail inbox, as well as in the "Bankruptcy Court Notices" inbox folder.

9

Dated at **HARTFORD, CONNECTICUT** this **29TH** day of **JUNE**, **2026**.

**RESPECTFULLY SUBMITTED,**

**MICHAEL J. HABIB, ESQ.** (CT29412)
Willcutts & Habib LLC
100 Pearl St., Fl. 14
Hartford, CT 06103-4500
Tel: (860) 249-7071
Fax: (844) 652-0602
E-Mail: Mike@InzitariLawOffice.com